**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:

                                            Case No.: 23-14383-SMG

DIAMANTE ENTERPRISES LLC,               Chapter 11

        Debtor-in-Possession.

_____/

***AMENDED* DEBTOR IN POSSESSION'S *EX-PARTE***
**APPLICATION FOR EMPLOYMENT OF REAL ESTATE BROKER**
<u>**KELLER WILLIAMS PHILLY EFFECTIVE AS OF JUNE 5, 2023**</u>
**(TO ADD DEBTOR'S SIGNATURE PAGE)**

DIAMANTE ENTERPRISES LLC, the Debtor-In-Possession (the "Debtor"), files this *Ex-Parte Application for Employment of Real Estate Broker Keller Williams Philly as of June 5, 2023* (the "Application")*,* pursuant to 11 U.S.C. § 327(a), Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rules 2014-1(A) and 9013-1(C)(4), In support of the Application, Debtor relies upon the Declaration of Chardae Taylor on behalf of Keller Williams Philly as proposed Broker for Debtor, and respectfully states as follows:

**A. <u>Jurisdiction</u>**

    1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

    2.      This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

    3.      Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

    4.      The statutory predicates for the relief requested herein are §§ 105(a) and 327(a) of the Bankruptcy Code.

**B. <u>Background</u>**

    1.      On June 5, 2023, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code ("the Code") (DE 1).

2.      On March 23, 2023, Debtor entered into a Listing Contract – Exclusive Right to Sell and/or Lease Commercial Property (the "March Contract") with Keller Williams Philly and its licensees (collectively "Keller Williams") to assist Debtor with the sale of its real property located at 2943 W. Master Street, Philadelphia, PA 19121 (the "Property).

3.      The March Contract expires on August 15, 2023, and on August 14, 2023, the Debtor and Keller Williams entered into a second contract for the sale of the Property, a copy of which is attached hereto as Exhibit "A" (the "New Contract").

4.      The March Contract and the New Contract terms remain unchanged except as to the expiration date.

5.      On July 8, 2023, Debtor entered into an Agreement for the Sale of Commercial Real Estate with a buyer for the Property.

6.      A motion to sell the Property has been filed with the Bankruptcy Court (DE 32).

7.      Debtor seeks to employ Keller Williams to perform professional services relating to the sale of the Property.

C.  **Authority for Relief**

5.      The Bankruptcy Code allows a debtor, with the Court's approval, to employ professional persons "that do not hold or represent an interest adverse to estate, and that are disinterested persons. 11 U.S.C. §327(a).

6.      To the best of the Debtor's knowledge, except as disclosed in Affidavit attached hereto as Exhibit "B", Keller Williams does not have any connection with the creditors or other parties in interest or their respective attorneys.

7.      As set forth in the Affidavit, to the best knowledge of Chardae Taylor, neither he nor Keller Williams represents any interest adverse to the Debtor.

8.      Keller Williams will receive as compensation three percent (3%) of the gross purchase price and $495.00 in connection with the sale of the Property.

## D. Relief Requested

9.      Debtor believes that it is in the best interest of its estate to retain Keller Williams to sell the Property in this Chapter 11 case.

10.     Debtor believes that the agents of Keller Williams are qualified to advise the Debtor on the sale of the Property.

11.     The professional services Keller Williams will render include, but are not limited to, the exclusive right to sell the Property and perform any and all actions necessary to effect the sale of the Property.

12.     The sale on the Property is scheduled to close on or before September 10, 2023.

13.     A proposed Order is attached as Exhibit "C".

**WHEREFORE**, the Debtor respectfully requests this Court (i) approve the Debtor's employment of Keller Williams as of June 5, 2023; and (ii) for such other relief as the Court deems just and proper.

DATED: August 14, 2023.

DIAMANTE ENTERPRISES LLC.

By: _Danielle Parker_

Danielle Parker
Its: Managing Member

# EXHIBIT "A"



LISTING CONTRACT    XLSC
**EXCLUSIVE RIGHT TO SELL AND/OR LEASE COMMERCIAL PROPERTY**
This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

1 Broker (Company) **Keller Williams Philly**          Licensee(s) (Name) **Chardae Taylor**
2                                                                    **Noah Ostroff**
3 Company Address **728 S Broad Street       3rd Floor**  Direct Phone(s) **267-496-4967**
4           **Philadelphia           PA 19146**     Cell Phone(s) **267-496-4967**
5 Company Phone **215-607-6007**                    Fax
6 Company Fax **n/a**                               Email **chardae@phillyliving.com** **noah@phillyliving.com**

7 Owner   **Diamanté Enterprises- Danielle Parker**
8
9
10
11 Company/Entity (if applicable)
12 Representative/Authorized Signer **Danielle Parker**              Title
13 Owner's mailing address
14
15 Phone **+19546040078**                         Cell Phone **+19546040078**
16 E-mail **mrsdanielleparker@icloud.com**         Fax

17 **Owner understands that this Listing Contract is between Broker and Owner.**
18 **Does Owner have a listing contract for this Property with another broker? ☐ Yes   ☒ No**
19 **If yes, explain:**

20 **1. PROPERTY**
21   (A) Address **2943 Master Street**                    **Philadelphia**      PA  **19121**
22     Municipality **Philadelphia**                County **Philadelphia**
23     Tax Identification #(s) **871539470☐**
24
25     Deed Book
26                                                      Page
27     Zoning Classification & Present Use **CMX1**
28
29     ☐ A legal description or a description of the Property is attached to this Contract.
30     Units in Property: **2**                Units Being Listed: **2**
31     Is the Property or any of its units currently leased? ☐ Yes  ☒ No
32       If yes, explain:
33   (B) **Inclusions:** Included with the Property are items listed here or ☐ listed in a property description sheet attached:
34
35
36
37
38     The Property is not being sold with a business unless otherwise stated here:
39                                                                                  .
40   (C) **Exclusions:** Excluded from the Property are items and leased equipment listed here or ☐ listed in the attached property description
41     sheet: **owners personal and business belongings**
42
43
44
45 **2. STARTING & ENDING DATES OF LISTING CONTRACT (ALSO CALLED "TERM")**
46   (A) No Association of Realtors® has set or recommended the term of this contract. Broker/Licensee and Owner have discussed and
47     agreed upon the term of this Contract.
48   (B) **Starting Date:** This Contract starts when signed by Broker and Owner, unless otherwise stated here:
49
50   (C) **Ending Date:** This Contract ends at 11:59 PM on **10/1/2023**          . By law, the term of a listing contract may
51     not exceed one year. If the Ending Date written in this Contract creates a term that is longer than one year, the Ending Date is
52     automatically 364 days from the Starting Date of this Contract.

53 Broker/Licensee Initials: _____    XLSC Page 1 of 9    Owner Initials: _____

**COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2022**
rev. 2/22; rel. 7/22

DocuSign Envelope ID: D5309374-7EFD-4753-BE6F-42FA3D1965BF

**3. DUAL AGENCY**

Owner agrees that Broker and Broker's Licensees may also represent the buyer/tenant of the Property. A broker is a Dual Agent when a broker represents both a buyer/tenant and Owner in the same transaction. A Licensee is a Dual Agent when a Licensee represents a buyer/tenant and Owner in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for a buyer/tenant and Owner. If the same Licensee is designated for a buyer/tenant and Owner, the Licensee is a Dual Agent. Owner understands that Broker is a Dual Agent when a buyer/tenant who is represented by Broker is viewing properties listed by Broker.

☐ **Dual Agency is not applicable.**

**4. DESIGNATED AGENCY**

Designated Agency is applicable, unless checked below. Broker designates the Licensee(s) above to exclusively represent the interests of Owner. If Licensee is also the buyer/tenant's agent, then Licensee is a DUAL AGENT.

☐ **Designated Agency is not applicable.**

**5. LISTED PRICE AND TERMS**

(A) Owner is hiring Broker to negotiate the following type of transaction regarding the disposition of the Property:

☒ A sale, for the following price and terms: $350,000 _____

_____
_____
_____
_____

or any other price and terms agreeable to Owner.

☐ A lease, or other tenancy, for the following price and terms described here, or by ☐ an exhibit/addendum outlining lease terms that is attached as part of this Contract, or any other price and terms agreeable to Owner: _____

_____
_____
_____
_____
_____

(B) Reasonable marketing expenses will be paid by Broker as follows: _____

_____
_____
_____
_____

(C) Reasonable marketing expenses will be paid by Owner as follows: _____

_____
_____
_____
_____

**6. BROKER'S DUTY**

(A) Broker is engaged as Owner's sole Owner Agent (Listing Agent) as described in the Consumer Notice to represent Owner, to market the Property, and to procure buyers and/or tenants for the Property. Broker will use reasonable diligence and care to procure buyers and/or tenants for the Property.

(B) Broker will not, unless otherwise agreed to in a separate, written agreement, provide management, repair, collection, legal, tax, or other services.

**7. OWNER'S DUTY**

(A) Owner will not enter into another listing contract for the Property(s) identified in Paragraph 1 with another broker that begins before the Ending Date, or any extensions, of this Contract.

(B) Owner will cooperate with Broker to facilitate the sale and/or lease of the Property.

(C) All showings, negotiations and discussions about the sale, lease, or other tenancy of the Property will be done by Broker on Owner's behalf. All written or oral inquires that Owner receives or learns of regarding the Property, regardless of the source, will be referred to Broker.

(D) Within _____ days of the Starting Date of this Contract, Owner will provide to Broker:

　　1. Copies of all leases, subleases, rental agreements, option rights, rights of first refusal, rights of first offer, or other documents containing any other limitations on Owner's ability to finalize a sale or lease of the Property, including any changes to these after the original delivery of this information.

　　2. If available to Owner, copies of building plans, inspection reports, and environmental surveys. If the transaction is a sale, Owner will also deliver to Broker, within _____ days of the Starting Date of this Contract, available title reports, boundary surveys, and existing notes and mortgages that may continue to affect the Property after settlement.

Broker/Licensee Initials: _____　　　　XLSC Page 2 of 9　　　　Owner Initials: _____

112  (E) Owner will not permit any real estate signs, other than those belonging to Broker, to be placed on the Property during the term of
113  this Contract.
114  (F) Owner has full responsibility for maintenance, repair, replacement, operation, and security of the Property. Broker will not be lia-
115  ble for any loss, damage, or injury to the Property or to Owner, any current tenants of the Property, any buyer, prospective buyer,
116  tenant, prospective tenant, or any other person, including those that may occur as a result of Broker's use of a lock box. Owner will
117  hold harmless Broker, Licensee, Broker's employees and agents, and will indemnify such persons and entities from and against all
118  claims, suits, and liability as may arise from property damage or injuries that occur on or about the Property, including judgments,
119  costs of defense, attorneys' fees, and settlement. Owner hereby releases and relieves Broker, and waives Owner's entire right of
120  recovery against Broker, for direct or consequential loss or damage arising out of or incident to the perils covered by insurance
121  carried by Owner, whether or not due to the negligence of Broker.

122 **8. BROKER'S FEE**
123  (A) The Broker's Fee has been determined as a result of negotiations between Broker and Owner and has not been established or rec-
124  ommended by any Association of Realtors®, or by any other organization or individual.
125  (B)  Broker's Fee in the case of a sale is _3____ % of the gross purchase price of real property, AND $_495.00_____ ,
126  AND _____ % of the gross purchase price of personal property, unless otherwise stated here: _____
127  _____
128  _____
129  _____
130  _____
131  (C) Broker's Fee in the case of a lease is _____ % of all rent to be collected from tenant AND $_____ ,
132  unless otherwise stated here: _____
133  _____
134  _____
135  _____
136  (D) Broker's Fee for any options, renewals, extensions, expansions, or any other continued tenancy is _____ % of the rent to be
137  collected AND $_____ , unless otherwise stated here: _____
138  _____
139  _____
140  _____

141 **9. COOPERATION WITH OTHER BROKERS**
142  Licensee(s) has explained Broker's company policies about cooperating with other brokers. Broker and Owner agree that Broker will
143  pay **from Broker's Fee** a fee to another broker who procures the buyer and who:
144  (A) ☐ **Represents Owner (SUBAGENT).** Broker will pay _____ of/from the sale price in the
145  event of a sale or _____ of/from the lease value in the event of a lease.
146  (B) ☒ **Represents the buyer or tenant (BUYER'S AGENT).** Broker will pay _3%_____ of/from the
147  sale price in the event of a sale or _____ of/from the lease value in the event of a lease.
148  **A buyer's Agent, even if compensated by Broker for Owner, will represent the interests of the buyer/tenant.**
149  (C) ☐ **Does not represent either Owner or a buyer/tenant (TRANSACTION LICENSEE).** Broker will pay _____
150  _____ of/from the sale price in the event of a sale or_____ of/from the lease
151  value in the event of a lease.
152  (D) ☐ Broker will pay _____ of/from the renewal value for all lease renewals.

153 **10. PAYMENT OF BROKER'S FEE**
154  (A) **If Sale or Lease Occurs**
155   1. **Owner will pay Broker's Fee if the Property, or any ownership interest in it, is sold, leased, or exchanged at the listed**
156   **price or any price acceptable to Owner, during the term of this Contract, by Broker, Licensee, Owner, or by any other**
157   **person or broker.**
158   2. Owner will pay Broker's Fee if negotiations that are pending at the Ending Date of this Contract result in a sale, lease or other
159   tenancy.
160   3. In the case of a sale, Broker's Fee will be paid upon delivery of the deed or other evidence of transfer of title or interest. If the
161   transaction involves an installment contract, then Broker's Fee will be paid upon the execution of the installment contract. In
162   the case of a lease, Broker's Fee will be paid upon execution of a lease by Owner and a tenant.
163   4. Owner will pay Broker's Fee in United States currency. If Owner fails to pay Broker any amount when due under this
164   Contract, then the amount owed will bear interest at the rate of 15 percent per year.
165   5. Owner will pay Broker's Fee after the Ending Date of this Contract IF:
166    a. The Property is sold, leased, or exchanged in whole or in part within _____ days of the Ending Date, AND
167    b. The Property was presented to buyer/tenant, or buyer/tenant negotiated to buy or lease the Property, during the term of
168    this Contract. Owner will not owe Broker's Fee under the provisions of this paragraph 10(A) if, after the expiration of
169    this Contract, Owner has entered into an exclusive right to sell or lease contract for the Property with another broker at
170    the time of the sale.

171 Broker/Licensee Initials: _____      XLSC Page 3 of 9      Owner Initials: _____

172  (B) **If Sale or Lease Does Not Occur**
173  In the event of any of the following, Broker's Fee will be calculated on the listed price of the Property. Owner will pay Broker's
174  Fee when:
175  1. **A ready, willing, and able buyer, or in the case of a lease or other tenancy, a ready, willing, and able tenant, is found by**
176  **Broker or by anyone, including Owner.** A willing buyer is one who will buy the Property at the price and terms stated in this
177  Contract, or at any other price and terms agreeable to Owner. A willing tenant is one who will lease the Property at the price and
178  terms stated in this Contract, or at any other price and terms agreeable to Owner.
179  2. The Property, or any part of it, is taken by any government for public use (Eminent Domain) which makes the Property unmar-
180  ketable in its total state as offered in this Contract.
181  3. The Property, or an interest in it, is voluntarily or involuntarily donated or transferred.
182  4. Owner is a partnership, joint venture, limited liability company, corporation, trust or other entity, and any interest in Owner
183  is voluntarily or involuntarily sold, contributed, conveyed, or transferred to another person or entity that, as of the date of this
184  Contract, does not have any ownership interest in Owner.
185  5. Owner withdraws the Property from the market; acts as if the Property is not on the market; breaches, terminates or cancels this
186  Contract; causes or allows the Property to be made unmarketable or to be reduced in value; or fails to do the things required of
187  Owner in the Agreement of Sale or Lease.
188  (C) **In Case of Buyer/Tenant Default**
189  If a buyer/tenant enters into an Agreement of Sale or Lease, then refuses to buy or rent the Property, or if the buyer/tenant is unable
190  to buy or rent because of failing to do the things required of the buyer/tenant in the Agreement of Sale or Lease, Owner will pay
191  Broker:
192  1. _____ of/from monies paid by buyer/tenant on account of the transaction, including, but not
193  limited to,  extension fees, option payments, liquidated damages, judgments, etc, OR
194  2. Broker's Fee, whichever is less.
195  (D) **Successors and Assigns**
196  If a buyer/tenant under a lease for which a Broker's Fee is payable under this Contract, its successors or assigns, or any agent,
197  officer, employee or shareholder of a buyer/tenant purchases the Property, whether strictly in accordance with the terms of any
198  option, right of first refusal, similar right or otherwise during the term of the lease, any extension thereof, or within _____ days
199  after the expiration thereof, then Owner will pay the Broker's Fee in Paragraph 8(B).

200 **11. BROKER'S FEE IF TENANT BUYS PROPERTY**
201  The Broker's fee if a tenant procured by Broker buys the Property is _____
202  of/from the sale price and paid by Owner at settlement.

203 **12. BROKER NOT RESPONSIBLE FOR DAMAGES**
204  Owner agrees that Broker and Broker's Licensee(s) are not responsible for any damage to the Property or any loss or theft of personal
205  goods from the Property unless such damage, loss or theft is solely and directly caused by Broker or Broker's Licensee(s).

206 **13. BROKER INDEMNIFICATION**
207  Owner hereby agrees that if any claims for brokerage commissions or fees are ever made against Owner and/or Broker in connection
208  with this transaction, each party shall pay its own legal fees and costs in connection with such claims. It is further agreed that Owner
209  will indemnify and hold harmless Broker from and against the non-performance of this Agreement by Owner or by a buyer/tenant,
210  and from any claim of loss or claim for brokerage commissions, including all legal fees and costs, that may be made by any person or
211  entity. This paragraph shall survive settlement.

212 **14. CONFIDENTIALITY**
213  Owner understands that a buyer/tenant or buyer/tenant's representatives might not treat the existence, terms or conditions of any offer
214  as confidential unless there is a confidentiality agreement between Owner and buyer/tenant.

215 **15. DEPOSIT MONEY**
216  (A) Broker, if named in an agreement of sale, will keep all deposit monies paid by or for the buyer in an escrow account until the sale
217  is completed, the agreement of sale is terminated, or the terms of a prior written agreement between the buyer and Owner have
218  been met. This escrow account will be held as required by real estate licensing laws and regulations. Buyer and Owner may name a
219  non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not
220  by the Real Estate Licensing and Registration Act. Owner agrees that the person keeping the deposit monies may wait to deposit
221  any uncashed check that is received as deposit money until Owner has accepted an offer.
222  (B) Broker, if named in a lease, will keep all deposit monies paid by or for the tenant in an escrow account until the tenancy ends,
223  the lease is terminated, or the terms of a prior written agreement between the tenant and Owner have been met. This escrow
224  account will be held as required by real estate licensing laws and regulations. Tenant and Owner may name a non-licensee as the
225  escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by the Real Estate
226  Licensing and Registration Act. Owner agrees that the person keeping the deposit monies may wait to deposit any uncashed check
227  that is received as deposit money until Owner has accepted the lease.

228 Broker/Licensee Initials: _____        XLSC Page 4 of 9        Owner Initials: _____

229    (C) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
230         determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
231         1. If an agreement of sale is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
232            agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
233         2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
234            Broker how to distribute some or all of the deposit monies.
235         3. According to the terms of a final order of court.
236         4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
237            deposit monies if there is a dispute between the parties that is not resolved.
238    (D) Owner agrees that if Owner names Broker or Broker's licensee(s) in litigation regarding deposit monies, the attorneys' fees and
239         costs of the Broker(s) and licensee(s) will be paid by Owner.

## 240 16. BROKER'S SERVICE TO OTHER PARTIES

241 Broker may provide services to a buyer/tenant for which Broker may accept a fee. Such services may include, but are not limited to:
242 document preparation; ordering certifications required for closing; financial services; title transfer and preparation services; ordering
243 insurance, construction, repair, or inspection services.

## 244 17. OTHER PROPERTIES

245 Owner agrees that Broker may list other properties for sale or rent and that Broker may show and sell other properties to prospective
246 buyers/tenants.

## 247 18. ADDITIONAL OFFERS

248 Unless prohibited by Owner, if Broker is asked by a buyer or another licensee(s) about the existence of other offers on the Property,
249 Broker will reveal the existence of other offers and whether they were obtained by the Licensee(s) identified in this Contract, by
250 another Licensee(s) working with Broker, or by a licensee(s) working for a different Broker. ONCE OWNER ENTERS INTO AN
251 AGREEMENT OF SALE OR LEASE, BROKER IS NOT REQUIRED TO PRESENT OTHER OFFERS.

## 252 19. PROPERTY INFORMATION

253 Owner is hereby advised of Owner's duty to disclose known material defects and conditions about the Property. If the Property contains
254 not less than one and not more than four residential dwelling units Owner may be required by the Real Estate Seller Disclosure  Law
255 (68 C.S. §7301 et seq.) to disclose these defects and conditions on a separate disclosure statement.
256    (A) Within 5 days of the Starting Date of this Contract, Owner will (☐ will not) deliver a completed Property Information Sheet to
257         Broker.
258    (B) Owner represents and warrants that there are no known material defects or environmental hazards affecting the Property includ-
259         ing, but not limited to, contamination by radon gas, asbestos, polychlorinated biphenyls, underground storage tanks, or petroleum
260         products, except as noted on a separate disclosure statement or as follows: _____
261         _____
262         _____
263    (C) Owner hereby agrees to indemnify, defend (with counsel reasonably acceptable to Broker), and hold Broker harmless against
264         claims, actions, suits, liabilities, costs, and expenses arising out of Owner's failure to disclose known material defects and condi-
265         tions, including judgments, costs of defense, attorneys' fees, and settlement. This clause will survive the Contract.

## 266 20. OWNER REPRESENTATIONS

267 Owner represents and warrants that:
268    (A) Owner, or each person signing this Contract on behalf of Owner, has the full right, power and authority to execute this Contract as
269         or on behalf of Owner;
270    (B) Owner owns the Property and/or has the full right, power, and authority to complete the sale or lease as provided in this Contract;
271    (C) Neither Owner nor the Property is the subject of a bankruptcy, insolvency, probate, or conservatorship proceeding;
272    (D) Owner has no notice or knowledge that any tenant or sub-tenant of the Property, if any, is the subject of a bankruptcy or insolvency
273         proceeding;
274    (E) There are no effective, valid, or enforceable option rights, rights of first refusal, rights of first offer, or any other restrictions,
275         impediments, or limitations on Owner's right, ability, and capacity to complete a sale or lease of the Property, except as disclosed
276         in writing as required in Paragraph 7(D).
277    (F) If the transaction is a sale, Owner is legally able to sell the Property with a fee simple title, free and clear, except as follows:
278         (additional mortgage, equity loans, debts, liens, judgments, or taxes in arrears, municipal notices or assessments received, mineral
279         rights agreements, etc.) _____
280         _____
281         _____
282    (G) This Property is not subject to preferential tax treatment unless otherwise indicated here: _____
283         _____
284         _____
285         _____
286         **If this Property is subject to preferential tax treatment, Owner should seek advice from legal and financial experts.**

287 **Broker/Licensee Initials:** _____          XLSC Page 5 of 9          **Owner Initials:** _____

DocuSign Envelope ID: D5309374-7EED-4753-B56F-42FA3D1965BF

**21. RECORDINGS ON THE PROPERTY**

(A) Owner understands that potential buyers viewing the Property may engage in photography, videography or videotelephony on the Property. Owner should remove any items of a personal nature Owner does not wish to have photographed or recorded, such as family photos, important or confidential paperwork (including any information related to the listing or communications with Broker or Licensee) and all other personally identifiable information such as birthdates, social security numbers, telephone numbers, etc. Owner is responsible for providing this same notification to any occupants of the Property.

(B) Any person who intentionally intercepts oral communications by electronic or other means without the consent of all parties is guilty of a felony under Pennsylvania law. Owner understands that recording or transmitting audio may result in violation of state or federal wiretapping laws. **Owner hereby releases all BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them, and any PERSON, FIRM or CORPORATION who may be liable by or through them, from any claims, lawsuits and actions which may arise from any audio or video recordings occurring in or around the Property.**

**22. RECOVERY FUND**

Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment) against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund repays persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the Fund, call (717) 783-3658.

**23. NOTICE TO PERSONS OFFERING TO SELL OR RENT HOUSING IN PENNSYLVANIA**

Federal and state laws make it illegal for a seller, a broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX, DISABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL ORIGIN, USE OR HANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCIATION TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or set deposit amounts, or as reasons for any decision relating to the sale of property.

**24. TRANSFER OF THIS CONTRACT**

(A) Owner agrees that Broker may transfer this Contract to another broker when:
1. Broker stops doing business, OR
2. Broker forms a new real estate business, OR
3. Broker joins his business with another.

(B) Broker will notify Owner immediately in writing if Broker transfers this Contract to another broker. Owner will follow all requirements of this Contract with the new broker.

**25. ALTERNATIVE TRANSACTION**

If the sale or lease of the Property changes to any other transaction, including but not limited to sale, lease, exchange, option to buy, right of first refusal, ground lease, sublease or assignment of lease, or expansion or relocation of Tenant in any other property of Owner, then Broker will be Owner's sole and exclusive Agent for the transaction and will represent Owner under the terms and conditions of this Contract.

**26. CONFLICT OF INTEREST**

It is a conflict of interest when Broker or Licensee has a financial or personal interest in the property and/or cannot put Owner's interests before any other. If Broker, or any of Broker's licensees, has a conflict of interest, Broker will notify Owner in writing in a timely manner.

**27. ENTIRE CONTRACT**

This Contract is the entire agreement between Broker and Owner.  Any verbal or written agreements that were made before are not a part of this Contract.

**28. CHANGES TO THIS CONTRACT**

All changes to this Contract must be in writing and signed by Broker and Owner.

**29. MARKETING OF PROPERTY**

(A) Marketing Services
1. A Multiple Listing Service (MLS) and Commerical Information Exchange (CIE) are subscription services used by real estate licensees to market properties to other subscribers. If marketed in an MLS, Broker will make an offer of cooperating compensation to another participant who procures a tenant or buyer for the Property (See Paragraph 9). MLS and CIE marketing are govered by specific rules and policies, which may differ depending on the service used.
2. Owners have the right to decide whether their Property will be marketed in an MLS, CIE, or otherwise, but should understand that opting out of MLS marketing may restrict Broker's ability to market the Property in other ways.
   ☐ Broker **will not** use a Multiple Listing Service (MLS), Commercial Information Exchange (CIE) or other distribution methods to advertise the Property to other real estate brokers and salespersons. Owner understands and agrees that the listing may be reported to an MLS, but will not be marketed for sale via an MLS. Further, Seller understand and agrees that any and all public marketing of the Property through the use of other means such as signs, social media, and public-facing websites may be prohibited. Owner may be required to sign an additional waiver or release to comply with MLS rules and policies.
   ☒ Broker will use the following to advertise the Property to other real estate brokers and salespersons (check all that apply):
      ☒ MLS        ☐ CIE        ☐ Other distribution methods

Broker/Licensee Initials: _____ XLSC Page 6 of 9 Owner Initials: _____

348    3. Owner agrees that Broker and Licensee, and an MLS, CIE or other distribution methods are not responsible for mistakes in
349       advertising of the Property.
350 (B) Virtual Office Website (VOW) and Internet Data Exchange (IDX)
351    1. Some brokers may use a VOW or IDX, which are governed by specific rules and policies. Owners have the right to control
352       some elements of how their property is displayed on a VOW and/or IDX website(s).
353    2. Owner elects to have the following features disabled or discontinued for VOW and IDX websites (check all that apply):
354       ☐ Comments or reviews about Owner's listings, or a hyperlink to such comments or reviews, in immediate conjunction with
355          Owner's listing.
356       ☐ Automated estimates of the marketing value of Owner's listing, or a hyperlink to such estimates, in immediate conjunction
357          with Owner's listing.
358 (C) Other
359    1. Where permitted, Broker, at Broker's option, may use: for sale sign, lock box, key in office, open houses and advertising in all
360       media, including print and electronic, photographs and videos, unless otherwise stated here: _____
361       _____
362       _____
363    2. ☐ Owner does not want the listed Property to be displayed on the Internet.
364       ☐ Owner does not want the address of the listed Property to be displayed on the Internet.
365    3. Owner understands and acknowledges that, if the listed Property is not displayed on the Internet, consumers who conduct
366       searches for listings on the Internet will not see information about the listed Property in response to their search.
367 (D) Owner understands and acknowledges that, if an open house is scheduled, the property address may be published on the Internet
368    in connection to the open house.
369 (E) Other _____

370 **30. PUBLICATION OF SALE PRICE**
371    Owner is aware that the MLS, CIE, newspapers, websites, and other media may publish the final sale price of the Property.

372 **31. TAXES & ASSESSMENTS**
373 (A) At settlement, Owner will pay one-half of the total Real Estate Transfer Taxes, unless otherwise stated here:_____
374    _____
375 (B) Yearly Property Taxes $ 892.00 _____    Property Assessed Value $ 63700 _____
376 (C) Is the property preferentially assessed (including a tax abatement)?    ☐ Yes    ☒ No
377    If applicable, how many years remain?_____
378 (D) Municipality Assessments $ _____

379 **32. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA)**
380    The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
381    Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on disposition of
382    U.S. real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons
383    purchasing U.S. real property interests (tranferee) from foreign persons, certain purchasers' agents, and settlement officers are required
384    to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S.
385    taxation of gains realized on disposition of such interests. The transferee/byer, as the withholding agent, may request that you complete
386    a FIRPTA Affidavit regarding your status as a foreign person as defined by the Act. Owner agrees to comply, if applicable.

387 **33. TITLE & POSSESSION**
388 (A) Owner will give possession of Property to a buyer at settlement, or on  TBD _____
389 (B) At settlement, Owner will transfer full rights of ownership (fee simple) to a buyer except as follows:
390    ☐ Oil        ☐ Gas        ☐ Mineral        ☐ Coal        ☐ Other
391    If checked, please explain: _____
392    _____
393 (C) Owner has, as of the date of this Agreement:
394    ☐ First mortgage with_____Amount of balance $ _____
395       Address _____
396       Phone _____Acct. # _____
397    ☐ Second mortgage with _____Amount of balance $ _____
398       Address _____
399       Phone _____Acct. # _____
400    ☐ Line of credit with _____Amount of balance $ _____
401       Address _____
402       Phone _____Acct. # _____
403    ☐ Owner authorizes Broker to receive mortgage payoff and/or line of credit payoff information from lender(s).

404 Broker/Licensee Initials: _____        XLSC Page 7 of 9        Owner Initials: _____

405    (D) Owner has, as of the date of this Agreement:

406        ☐ Judgments $ _____    ☐ Past Due Municipal Assessment $ _____

407        ☐ Past Due Property Taxes $ _____    ☐ Federal Tax Liens $ _____

408        ☐ State Tax Liens $ _____    ☐ Other: _____

409    (E) Owner will immediately notify Broker in the event any of the above information sufficiently changes to render it materially inac-
410        curate. This includes, but is not limited to, the satisfaction of a mortgage, a change in account number, the refinance of a mortgage,
411        and the entry of a new tax lien.

412 **34. BUYER FINANCING**

413    Owner will accept the following arrangements for buyer to pay for the Property:

414    ☒ Cash    ☒ Conventional mortgage    ☐ Other _____

415 **35. BANKRUPTCY**

416    Owner will notify Broker immediately in the event the Property comes under the jurisdiction of a bankruptcy court. If Owner is the
417    subject of bankruptcy, Owner will take all steps necessary to obtain court approval of Broker's appointment to sell or lease the Property,
418    unless Broker elects to terminate this Contract upon notice of the bankruptcy.

419 **36. COPYRIGHT**

420    In consideration of Broker's efforts to market Owner's Property as stated in this Contract, Owner grants Broker a non-exclusive,
421    world-wide license (the "License") to use any potentially copyrightable materials (the "Materials") which are related to the Property
422    and provided by Owner to Broker or Broker's representative(s). The Materials may include, but are not limited to: photographs,
423    images, video recordings, virtual tours, drawings, written descriptions, remarks, and pricing information related to Owner's Property.
424    This License permits Broker to submit the Materials to one or more Multiple Listing Services, Commercial Information Exchanges or
425    other distribution methods, to include the Materials in compilations of property listings, and to otherwise distribute, publicly display,
426    reproduce, publish and produce derivative works from the Materials for any purpose that does not conflict with the express terms of
427    this Contract.  The License may not be revoked by Owner and shall survive the ending of this Contract. Owner also grants Broker the
428    right to sublicense to others any of these rights granted to Broker by Owner. Owner represents and warrants to Broker that the License
429    granted to Broker for the Materials does not violate or infringe upon the rights, including any copyrights, of any person or entity. Owner
430    understands that the terms of the License do not grant Owner any legal right to any works that Broker may produce using the Materials.

431 **37. NOTICE BEFORE SIGNING**

432    When signed by both parties, this is a legal contract. Owner acknowledges that Broker has advised Owner to consult and retain experts
433    to advise and represent Owner concerning the legal and tax effects of this Contract and the completion of the sale, lease, or alternative
434    transaction, as well as the condition and/or legality of the Property, including, but not limited to, the Property's improvements, equip-
435    ment, soil, tenancies, title and environmental aspects. Broker will have no obligation to investigate any such matters unless expressly
436    agreed to in writing by Broker and Owner. Owner further acknowledges that in determining the financial soundness of any prospective
437    buyer, tenant, or security offered, Owner will rely solely on Owner's own investigation, regardless of Broker's assistance in gathering
438    information.

439 **38. SPECIAL CLAUSES**

440    **(A) The following are part of this Listing Contract if checked:**

441        ☐ Commercial Property Information Sheet (PAR Form CPI)
442        ☐ Consumer Services Fee Addendum (PAR Form CSF)
443        ☐ Vacant Land Addendum to Listing Contract (PAR Form VLA)
444        ☐ Short Sale Addendum (PAR Form SSL)
445        ☐ _____
446        ☐ _____

447    **(B) Additional Terms:**

448
449
450
451
452
453
454
455
456
457
458
459
460
461
462

463 Broker/Licensee Initials: _____      XLSC Page 8 of 9      Owner Initials: _____

464
465 **Owner has read the Consumer Notice, where applicable, as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.**

466
467 **Owner has received the Seller's Property Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if warranted.**

468
469 **Owner has received the Lead-Based Hazards Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if warranted.**

470 **Owner has read the entire Contract before signing. Owner must sign this Contract.**

471 Owner gives permission for Broker to send information about this transaction to the fax number(s) and/or e-mail address(es) listed. Return
472 of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all parties,
473 constitutes acceptance by the parties. This Contract may be executed in one or more counterparts, each of which shall be deemed to be an
474 original and which counterparts together shall constitute one and the same Agreement of the Parties.

475 **NOTICE BEFORE SIGNING:  IF OWNER HAS LEGAL QUESTIONS, OWNER IS ADVISED TO CONSULT A PENN-**
476 **SYLVANIA REAL ESTATE ATTORNEY.**

477 **OWNER** _____*Diamanté Enterprises*_____ **DATE** 8/14/2023 | 12:02 PM PDT

478 **OWNER** _____ **DATE** _____

479 **OWNER** _____ **DATE** _____

480 **BROKER (Company Name)** Keller Williams Philly _____

481    **AUTHORIZED PERSON** _____*Chardae Taylor*_____ **DATE** 8/14/2023 | 8:00 AM PD

**XLSC Page 9 of 9**

# EXHIBIT "B"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:

DIAMANTE ENTERPRISES LLC,

Case No.: 23-14383-SMG
Chapter 11

Debtor-in-Possession.

_____/

### AFFIDAVIT OF PROPOSED REALTOR FOR THE DEBTOR-IN-POSSESSION

STATE OF Pennsylvania )
) ss
COUNTY OF Philadelphia )

**BEFORE ME,** the undersigned authority, this date personally appeared Chardae Taylor, who being first duly sworn, states as follows:

1.     I am an agent of Keller Williams Philly with offices located at 728 Broad Street S3, Philadelphia PA 19146, and am authorized to make this declaration on behalf of the corporation in accordance with Bankruptcy Rule 2014 and Local Rule 6005-1.

2.     Except as stated in the attached Exhibit "A" –Listing Agreement, neither I nor Keller Williams Philly represent any interest adverse to the Debtor or the estate, and we are disinterested persons as required by 11 U.S.C. § 327(a).

4.     I have no connections, other than professional, with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. trustee, or any person employed in the Office of the U.S. trustee.

5.     I understand that the Court, in its discretion, may alter the terms and conditions of employment and compensation as it deems appropriate.

FURTHER AFFIANT SAYETH NAUGHT.

Chardae Taylor

Sworn to and Subscribed before me this
10th day of August , 2023

My Commission Expires: 11/16/2024
Notary Public, State of Florida
State of Pennsylvania
Jacinda Bennett

Personally Known _____
PA Identification cried
Produced Drivers Li _____ as identification

Commonwealth of Pennsylvania - Notary Seal
Jacinda Bennett, Notary Public
Philadelphia County
My Commission Expires 11/16/2024
Commission Number 1386256

**EXHIBIT C – PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

                                        Case No.: 23-14383-SMG

DIAMANTE ENTERPRISES LLC,             Chapter 11

       Debtor-in-Possession.

_____/

**ORDER GRANTING**
**DEBTOR'S *EX-PARTE* APPLICATION FOR EMPLOYMENT OF REAL ESTATE**
**BROKER, KELLER WILLIAMS PHILLY EFFECTIVE AS OF JUNE 5, 2023 (DE XX)**

THIS MATTER came before the Court upon the *Debtor's Ex-Parte Application for Employment of Keller Williams Philly as Realtor for the Debtor Effective as of June 5, 2023* (the "Application") (DE XX), and the Affidavit of Chardae Taylor, as Proposed Realtor for the Debtor, the ("Affidavit"), attached to the Application.

The Application requests entry of an Order approving the Debtor's employment of Keller Williams Philly to effect the sale of real property located at 2943 W. Master Street, Philadelphia, PA 19121 (the "Property).

The Court has jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. §157(b)(2)(A). The relief requested in the Application is in the best interests of the Debtor, its estate, and its creditors. The Affidavit makes relevant disclosures as required by Federal Rules of Bankruptcy Procedure 2014 and 2016 (the "Bankruptcy Rules"). The Affidavit contains a verified statement as required by Bankruptcy Rule 2014 demonstrating that Keller Williams Philly is disinterested as required by 11 U.S.C. §327(a). Pursuant to 11 U.S.C. §327(a), Bankruptcy Rule 2014(a), and Local Rule 2014-1(A), the Court is authorized to grant the relief requested in the Application. Upon the record herein, and after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

Accordingly, it is hereby **ORDERED**:

1.     The Application (DE XX) is **APPROVED.**

2.     The employment of Keller Williams Philly as realtor to the Debtor in this Chapter 11 case is approved pursuant to 11 U.S.C. §327(a), on a final basis, pursuant to the Exclusive Right of Sale Listing Agreement attached to the Application.

3.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

# # #

Submitted by:

Chad T. Van Horn, Esq.
Florida Bar No. 64500
**VAN HORN LAW GROUP, P.A.**
500 N.E. 4th Street, Suite 200
Fort Lauderdale, FL 33301
Telephone: (954) 765-3166
Facsimile: (954) 756-7103
Email: Chad@cvhlawgroup.com

*(Chad Van Horn, Esq. is directed to provide a copy of this signed Order to all parties of record and to file a Certificate of Service conforming with Local Rule 2002-1(F).*

2